THIRD DIVISION

December 31, 1997

No. 1-96-1603

CATHERINE BENAMON, Individually )

and as Mother and Next Friend of )

WILLIAM BENAMON, a minor, )

) Appeal from the Circuit

Plaintiff-Appellant, ) Court of Cook County.

)

v. )

)

SOO LINE RAILROAD COMPANY, a ) Honorable Philip L.

foreign corporation, and THE BELT ) Bronstein, Judge 

RAILWAY COMPANY OF CHICAGO, an ) Presiding.

Illinois corporation, )

)

Defendants-Appellees. )

JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

Catherine Benamon, individually and as mother and next friend of William Benamon, a minor, filed a negligence action against defendants Soo Line Railraod Company and the Belt Railway Company of Chicago seeking to recover for William's injuries sustained when William's foot allegedly became lodged between the rails on a train overpass.  William was unable to extricate himself before a train drove by causing partial amputation of his left leg.  The defendants moved for summary judgment alleging that they owed no duty to William because he was a trespasser.  The trial court agreed, granting summary judgment to the defendants; and the plaintiff appeals.

 On appeal, the plaintiff concedes that William was a trespasser but argues that the defendants owed William a duty of reasonable care because William's presence on the overpass was privileged due to private necessity; because William was a permissive user of the overpass; and because William was a minor and a dangerous condition existed upon the overpass.  The plaintiff also argues that the defendants owed William a duty to warn under section 337 of the Restatement of Torts (Restatement (Second) of Torts §337 (1965)).

Summary judgment is appropriate only if the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005 (West 1996).  In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions and affidavits in the light most favorable to the nonmoving party.  
Soderlund Brothers, Inc. v. Carrier Corp.
, 278 Ill. App. 3d 606, 663 N.E.2d 1 (1995).  Although a plaintiff is not required to prove his or her case at the summary judgment stage, some evidentiary facts to support the elements of the claim must be presented.  
Helms v. Chicago Park District
, 258 Ill. App. 3d 675, 630 N.E.2d 1016 (1994).  An appellate court's review of a summary judgment is 
de
 
novo
.  
Myers v. Health Specialists, S.C.
, 225 Ill. App. 3d 68, 587 N.E.2d 494 (1992).   

In the instant case, the undisputed facts before the court on the defendants' motion for summary judgment show that the defendants owned and maintained the railroad tracks and the right-of-way at the overpass located near 300 North Fulton in Chicago on January 13, 1992.

In his deposition, William testified that on January 13, 1992 at approximately 5 or 6 p.m., he was walking home after watching a basketball game at a grammar school.  William was 15 years old at the time.  As William passed a group of boys playing basketball in an alley, one of the boys asked him for a cigarette.  William told the boy he did not smoke and continued walking.  When he looked back, he saw the boys pointing at him and running towards him.  William thought they might want to steal his "Bulls" coat.  William testified that he ran up the railway incline near 300 North Fulton onto the tracks by the girder to hide because he was scared and wanted to do "anything to try to get away."  He was approximately three blocks from home but did not want the gang to see where he lived.  After William thought the gang was gone, he attempted to leave the area but his foot fell between the steel grates next to one of the wooden rails.  He tried but could not extricate his foot before a passing freight train partially amputated his left leg below the knee.

William also testified in his deposition that he saw numerous graffiti marks on the girders near the tracks.  He stated that he had never been upon the tracks prior to the accident and that none of his friends went up on the tracks.  William stated that during the four years prior to his accident, he saw other children playing up on the tracks and throwing rocks on three or four occasions.  He stated that he saw the children on the tracks somewhere between Fulton and West End.  William did not know where they got onto the tracks.  Over objection, William also testified that it was dangerous for the children to be on the tracks because "[t]hey could get killed."

Roger A. Fricke, the Soo line engineer who operated the freight train that injured the plaintiff, testified that he saw children playing on the tracks on other occasions but could not recall seeing them at the Fulton location.

Thomas A. Charniak, a member of the police department for Belt Railway since 1969, testified that he investigated William's accident.  He testified that prior to that occurrence he had never investigated a pedestrian/train accident in the Fulton area.  He stated that he was not aware that children in the area used the tracks or embankment to cross over to the other side of the tracks at the Fulton location.  Charniak also identified a photograph which showed graffiti on the center girder in the area where William was injured.

Jeffrey Hinkle, a private investigator for the short line railroad industry, hired by the defendants, testified in his deposition that during his investigation of the accident scene he noticed some graffiti on the girders.  He stated that he did not see any other indications that the area had been frequented by anyone other than railroad employees.  He did not notice any trails or tracks on the embankment leading up to the overpass and did not recall seeing any footprints or any other indication that the embankment was used by people to reach the top of the overpass.

I.  Private Necessity

It is axiomatic that a plaintiff in a negligence action must establish duty, breach of duty, and injury proximately caused by that breach.  
E.g.
, 
Ward v. K Mart Corp.
, 136 Ill. 2d 132, 554 N.E.2d 223 (1990); 
Rodriguez v. Norfolk & Western Ry. Co.
, 228 Ill. App. 3d 1024, 593 N.E.2d 597 (1992).  Traditionally, the duty of care owed by a landowner to a person entering the premises was dependent upon that person's status.  See, 
e.g.
, 
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 605 N.E.2d 493, 498 (1992); 
Miller v. General Motors Corp.
, 207 Ill. App. 3d 148, 565 N.E.2d 687 (1990).  See generally Restatement (Second) of Torts §§333 through 344 (1965).  However, the Premises Liability Act (740 ILCS 130/1 
et
 
seq
. (West 1992)) adopted in Illinois in 1984 abolished the common law distinctions of invitee and licensee providing, instead, that the duty owed to entrants is that of "reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them."  740 ILCS 130/2 (West 1992).  As to trespassers, however, the Premises Liability Act reaffirmed the general common law rule that no duty of reasonable care is owed a trespasser except to refrain from wantonly or willfully injuring him.  740 ILCS 130/3 (West 1992); 
Lee
, 152 Ill. 2d 432, 605 N.E.2d 493; 
Kahn v. James Burton Co.
, 5 Ill. 2d 614, 126 N.E.2d 836 (1955); 
Rodriguez
, 228 Ill. App. 3d 1024, 593 N.E.2d 597.  A trespasser "is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise."  Restatement (Second) of Torts §329, at 171 (1965).  See also 
Rodriguez
, 228 Ill. App. 3d 1024, 593 N.E.2d 597.

Illinois courts have created certain exceptions to the general rule of duty with respect to trespassers.  
Lee
, 152 Ill. 2d 432, 605 N.E.2d 493.  One such exception exists where the trespasser enters the property of another pursuant to the privilege of private necessity, that is, for the purpose of advancing or protecting his own interests, the property owner owes a duty of reasonable care under the circumstances.  
West v. Faurbo
, 66 Ill. App. 3d 815, 384 N.E.2d 457 (1978).  See generally Restatement (Second) of Torts §345, Comment a, at 227 (1965).

On appeal, the plaintiff first contends that the defendants owed William a duty of reasonable care because William was privileged to be on defendants' property due to the existence of a private necessity.  The plaintiff argues that William's deposition testimony shows that he was forced to go up the incline and onto the overpass for safety reasons and to protect his well-being.  She argues that William's testimony showed that he reasonably feared for his immediate safety after the gang of boys began chasing him.  She further argues that William was justified in hiding amongst the girders on the railroad overpass because he did not want the boys to see where he went or where he lived.

We disagree.  The private necessity privilege allows one to enter the premises of another without permission in an emergency situation when such entry is reasonably necessary to avoid serious harm.  Restatement (Second) of Torts §§345, 197 (1965).  However, as provided in the Restatement (Second) of Torts, "the privilege must be exercised at a reasonable time and in a reasonable manner" and in light of all of the circumstances.  Restatement (Second) of Torts §197, Comment a, at 355, Comment c, at 356 (1965).  Here, the deposition testimony of William suggests that his entry upon the railroad overpass was for his self-protection and to avoid the threat of bodily harm posed by the gang of boys chasing him.  However, even if we were to agree that William's belief in that threat was reasonable, we cannot agree that the action he took to avoid that threat was reasonable.  In his alleged effort to hide from his assailants, William chose to hide near the girders on the railroad tracks.  It is without question that the hazards posed by oncoming railroad trains presents a serious threat of harm to persons on or near the tracks.  William, himself, testified that it was dangerous to be on the tracks and that children could get killed playing up there.

Moreover, as the trial court noted, William had other, more safe, options available to him.  Those options included running home, running to a nearby house, or running back to the grammar school where he had watched a basketball game.  The plaintiff argues that a material question of fact exists as to whether any of these options would have provided for William's safety.  The plaintiff argues that it would have been nonsensical for William to run back to the school because he would have had to run into the path of the boys chasing him.  With respect to the option of running home, the plaintiff notes that William testified that he did not run home because he did not want the boys to see where he lived.  However, notwithstanding the viability of those particular options, it is clear that William was not forced upon the tracks.  It is also clear that, having chosen to hide, he could have chosen a less dangerous place to hide.  Instead, he ran up the embankment to hide in an area known to be inherently dangerous.

This factual situation is inapposite to that which existed in 
West v. Faurbo
, 66 Ill. App. 3d 815, 384 N.E.2d 457 (1978), the only Illinois case cited by the parties on the private necessity exception.  In that case, the plaintiff, a 13-year-old boy, who was riding his bicycle, had no choice but to swerve onto defendant's property to avoid an oncoming automobile.  The decision to enter the defendant's property, a grassy area near a driveway and about four to five feet from the edge of the sidewalk, was instantaneous.  There was no time for forethought.  Moreover, the grassy area was not inherently dangerous and, in fact, was just off the sidewalk and in the proximity of a parking lot meant to be used by members of the public, namely, patrons of the defendant's lounge.  (In fact, the plaintiff alternatively argued that he was a licensee in view of the proximity of his injury to the public parking lot.)  Here, unlike in 
West
, the defendant had time, albeit minimal, and opportunity to choose a course of action.  William chose to run onto an area not meant for public use and not easily accessible to the public.  The area was not street level; it was elevated so as to deter public access.  Under the circumstances, we must conclude as a matter of law that, given the existence of less dangerous options, and given the known risks associated with the railroad tracks, that William's presence on or near those tracks was not reasonable and thus his presence on those tracks was not a private necessity so as to entitle William, a trespasser, to a higher standard of care.  Restatement (Second) of Torts §197, Comments a, c; §345 (1965).

Moreover, even if William's presence upon the defendants' property was of private necessity, which we hold it was not, we would question William's further contention that the defendants owed him a duty of reasonable care.  At the time 
West v. Faurbo
, 66 Ill. App. 3d 815, 384 N.E.2d 457 (1978) was decided, Illinois determined premises liability issues on the basis of the status distinctions of invitee, licensee and trespasser as set forth in the Restatement (Second) of Torts (see Restatement (Second) of Torts §§328E to 350 (1965)).  Thus, the court in 
West
 applied the private necessity exception set forth in section 345 of the Restatement (Second) of Torts so as to treat the trespasser as a licensee.  In that regard, the court held that the defendants owed the plaintiff a duty to refrain from injury by willful and wanton misconduct; to exercise reasonable care in his "active operations"; and to warn of known hidden or latent dangers.

Approximately six years after 
West
 was decided, the Illinois legislature adopted the Illinois Premises Liability Act (740 ILCS 130/1 
et
 
seq
. (West 1992)).  As discussed above, that Act abolished the common law distinctions of invitee and licensee providing, instead, that the duty owed to entrants is that of "reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them."  740 ILCS 130/2 (West 1992).  One could argue, as the plaintiff does, that a trespasser who enters the property of another under private necessity, considered to be a licensee, is now entitled to the greater protection of reasonable care since there is no longer a distinction between licensees and invitees.  We would disagree with such an argument.  We believe that the abolishment of the licensee/invitee distinction in Illinois would not heighten the duties owed by a possessor of land to a person who enters his land under private necessity.  There can be no logical reason to afford a greater protection of reasonable care to such a person, who, in actuality, is a trespasser and who enters the property without the possessor's permission and without benefit to the possessor.  Thus, we would hold that had William satisfied the private necessity exception, the defendants would have owed him the duties applicable to licensees, such as to warn of any latent defects in the track configurations.

II.  Permissive User

The plaintiff next argues that the trial court erred in finding that William was not a permissive user of the premises.

Under the permissive user exception, a landowner owes a duty of reasonable care to a trespasser when the landowner permits regular use of his land for travel or otherwise and where the landowner is engaged in a dangerous activity involving a risk of death or serious bodily harm.  
Rodriguez v. Norfolk & Western Ry. Co.
, 228 Ill. App. 3d 1024, 593 N.E.2d 597 (1992).  See generally Restatement (Second) of Torts §334 (1965).  In accordance with this exception, a duty of care extends because it is said that the landowner's continued toleration of the trespassers' intrusion amounts to permission to make use of the land.  
Rodriguez
, 228 Ill. App. 3d 1024, 593 N.E.2d 597; 
Miller v. General Motors Corp.
, 207 Ill. App. 3d 148, 565 N.E.2d 687 (1990).  However, in order for a possessor of land to be subject to liability under this rule, it is necessary that the possessor know, or from facts within his knowledge should know, that persons constantly and persistently intrude upon some particular place within the land.  
Miller
, 207 Ill. App. 3d 148, 565 N.E.2d 687.  It is not enough that he know or have reason to know that persons persistently roam at large over his land.  Restatement (Second) of Torts §334, Comment d, at 186-87 (1965).

Here, the plaintiff contends that there is ample indication from the record of constant intrusion by others.  The plaintiff cites to deposition testimony of William and Jeffrey Hinkle concerning the existence of graffiti on the girders near the tracks and to the deposition testimony of William and Soo Line engineer, Roger Fricke, that they saw children along the tracks.  We do not agree that the testimony provided in this regard established the constant intrusion necessary to impose a duty of reasonable care upon the defendants under the permissive user theory.

Initially, we note that William's testimony concerning the presence of children upon the tracks established that that presence was minimal, three or four occasions during the four years preceding William's injury.  Also, William stated that he saw the children playing somewhere between Fulton and West End, not at the location where he had been injured.  Fricke testified that he saw children playing on the tracks but could not recall seeing them at the Fulton location where William was injured.  The deposition testimony of Hinkle as well as Thomas Charniak, a police officer for defendant Belt Railway, also disproved any contention of frequent intrusion by trespassers.  Hinkle testified that during his investigation of the accident scene, he did not notice any trails or tracks on the embankment leading up to the overpass.  He stated that he did not recall seeing any footprints or any other indication that the embankment was used regularly by people to reach the top of the overpass.  Charniak testified that since his employment with Belt Railway in 1969, he had never investigated a pedestrian/train accident in the Fulton area where William was injured.  He also stated that he was not aware that children used the tracks or embankment to cross over to the other side of the tracks at the Fulton location.  Finally, although there was some testimony as to the existence of graffiti upon the girders, there was no testimony establishing when the graffiti was placed upon the girders, how often it occurred, or how often it reoccurred after any obliteration.  It may very well be that the graffiti was placed on the girders on a few limited occasions.

As a result of these insufficiencies in the submissions to the trial court, it can be said as a matter of law that the plaintiff did not establish a constant intrusion by trespassers upon the area of the overpass where William was injured.  Absent indicia of constant intrusion, the plaintiff could not establish that the defendant railroads knew or should have known that trespassers frequented the area where William was injured and, thus, the defendants owed no duty of reasonable care to William.   See 
Rodriguez
, 228 Ill. App. 3d 1024, 593 N.E.2d 597; 
Miller
, 207 Ill. App. 3d 148, 565 N.E.2d 687.  See generally Restatement (Second) of Torts §334 (1965).

III.  Section 337 of the Restatement (Second) of Torts

The plaintiff next argues that the trial court erred in finding that the defendants owed no duty to William to warn him of the dangerous condition on the premises, namely, the spacing of the metal grates with the railroad ties.  The plaintiff argues that the condition created "the risk of someone getting their foot lodged and caught amongst the gratings and railroad ties next to the tracks."

Section 337 of the Restatement (Second) of Torts, which was adopted by our supreme court in 
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 605 N.E.2d 493 (1992), provides that a possessor of land owes a duty to exercise reasonable care to warn a trespasser of an artificial condition upon the land which involves a risk of death or serious bodily harm.  Such a duty is imposed when the possessor knows or has reason to know of the trespasser's proximity to the condition and if the condition is of such a nature that the possessor has reason to believe that the trespasser will not discover the condition or realize the risk involved.  Restatement (Second) of Torts §337 (1965).  In order to establish a duty under section 337, the trespasser must first show that the landowner knew or had reason to know of the trespasser's presence.  
Lee
, 152 Ill. 2d 432, 605 N.E.2d 493.  In 
Lee
, the court found that the defendant carrier possessed knowledge of trespassers' presence near the electrified third rail based upon the carrier's stipulation to that fact plus evidence of ten prior accidents during a 27-year period involving a 3.2 mile segment of track where the third rail ran at grade or street level.  The court also noted that the third rail was located "a mere 6 1/2 feet from the public sidewalk" that was adjacent to a busy city street.  
Lee
, 152 Ill. 2d at 451, 605 N.E.2d at 501.  According to the court, the defendant "knew that pedestrians used the sidewalk to cross the tracks, and certainly that pedestrians gained access thereby to those tracks."  
Lee
, 152 Ill. 2d at 451, 605 N.E.2d at 501.

Here as discussed in part II of this opinion, the submissions of the parties showed that the defendants had no actual knowledge and could not reasonably have known that trespassers frequented the area where William was injured.  Unlike in 
Lee
, the area where William sustained his injury was not easily accessible to pedestrians and was not near or adjacent to a public sidewalk used to cross the railroad tracks.  In order to reach the area where William was injured, one would have to climb an incline or embankment.  This fact alone inhibited public access to the tracks.  Given the absence of actual or reasonable knowledge of the presence of trespassers, the defendants owed no duty to warn trespassers of the alleged dangerous artificial condition created by the spacing of the metal grates with the railroad ties; and summary judgment was properly granted with respect to plaintiff's claim under section 337 of the Restatement (Second) of Torts.

IV.  Child Trespassers

As her final argument on appeal, the plaintiff argues that the trial court erred in finding a lack of duty to William in his status as a child trespasser.

As a general rule, a duty is imposed upon an owner or other person in possession and control of the premises to exercise due care to remedy a dangerous condition on the land or to otherwise protect children from injury resulting from it where:  (1) the owner or occupier of land knew or should have known that children habitually frequent the property; (2) a defective structure or dangerous condition was present on the property; (3) the defective structure or dangerous condition was likely to injure children because they are incapable, because of age and maturity, of appreciating the risk involved; and (4) the expense and inconvenience of remedying the defective structure or dangerous condition was slight when compared to the risk to children.  
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 660 N.E.2d 863 (1995); 
Kahn v. James Burton Co.
, 5 Ill. 2d 614, 126 N.E.2d 836 (1955).  See also Restatement (Second) of Torts §339, at 197 (1965).  Reasonable foreseeability of harm determines liability in negligence actions involving injury to child trespassers.  
Mt. Zion State Bank
, 169 Ill. 2d 110, 660 N.E.2d 863.  In accordance with 
Kahn
 and its progeny, the harm is sufficiently foreseeable if the owner or party in possession or control of the premises "'knows or should know that children frequent the premises 
and
 if the cause of the child's injury was the dangerous condition on the premises.'"  (Emphasis original.)  
Mt. Zion Bank
, 169 Ill. 2d at 120, 660 N.E.2d at 869 quoting 
Corcoran v. Village of Libertyville
, 73 Ill. 2d 316, 326, 383 N.E.2d 177 (1978).

Here, as noted above, there is an absence of facts in the submissions of the parties to establish that the defendants knew or should have known that children frequent the area where William was injured.  Nothing in the parties' submissions established the frequency with which graffiti was painted on the girders near the site of the injury; and testimony regarding the presence of children in the area was minimal (three or four times in four years) and, then, only as to the area between Fulton and West End, not the specific area where William was injured.  Testimony regarding the physical condition of the area wherein William was injured showed a lack of frequent usage in that there was an absence of any footprints or trails on the embankment leading up the overpass.  Moreover, although, in her argument, the plaintiff characterizes the area where William was injured as an area "intended as a walkway," there is no evidentiary support for such a statement.  There also was no testimony suggesting the need for such public access to the tracks given the absence of any commuter railroad stations in the area.  Instead the parties' submissions showed that the area wherein William's alleged injury occurred consisted of railroad tracks utilized by nonstop trains.  As noted above, access to that area was extremely limited as evidenced by the need to climb an embankment in order to gain access to the tracks.  Thus, since the parties submissions did not establish that the defendants knew or should have known that children frequented the area, the plaintiff could not establish foreseeability of harm upon which to impose a duty upon the defendants to exercise due care to remedy a dangerous condition on the land.  See 
Mt. Zion State Bank
, 169 Ill. 2d 110, 660 N.E.2d 863.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

PRESIDING JUSTICE LEAVITT and CAHILL, J., concur.