# IN THE COURT OF APPEALS OF IOWA

No. 13-1802
Filed December 24, 2014

**CITY OF DES MOINES,**
       Plaintiff-Appellant,

**vs.**

**CASSANDRA WEBSTER,**
       Defendant-Appellee,

**and**

**JAMES LOVELAND, JEANNE
ZEITLER, and ERIC RANDALL,**
       Intervenors-Appellees.
_____

       Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.


       The City of Des Moines appeals the district court's denial of its petition for

writ of certiorari concerning the defense of necessity.  **REVERSED AND**

**REMANDED WITH DIRECTION.**


       Mark Godwin, Deputy City Attorney, Des Moines, for appellant.

       Charles A.D. Hill of Iowa Legal Aid, Des Moines, for intervenors-appellees.


       Heard by Danilson, C.J., and Vogel and Bower, JJ

**BOWER, J.**

The City of Des Moines (City) appeals the district court's ruling denying its petition for a writ of certiorari and upholding the ruling for the intervenors-appellees, James Loveland, Jeanne Zeitler, and Eric Randall (appellees). The City claims the district court erred in finding the defense of necessity applicable to the homeless individuals' situation. We find the district court erred in finding substantial evidence existed to support the defense of necessity. Accordingly, we reverse the judgment of the district court and remand for entry of an order sustaining the writ of certiorari.

## I.    BACKGROUND FACTS AND PROCEEDINGS.

Homeless people in Des Moines often resort to living under bridges in the metro area. The homeless have created campsites from a collection of canvas tents and makeshift lean-tos made from discarded wood and other materials. These dwellings serve as a place to sleep and store their possessions. The campsite at issue is located on the southwestern bank of the Raccoon River, underneath the Martin Luther King Jr. bridge and near the West Martin Luther King Jr. Parkway/Fleur Drive intersection. The appellees began living at the campsite in March 2012.

On January 17, 2013, the City posted notices addressed to the occupants under the Martin Luther King Jr. bridge. The notice stated they were in violation of section 102-615 of the Municipal Code of the City of Des Moines "by encroaching (living/residing and storage of personal property) on City of Des

Moines property."[1]  The notice advised the occupants to leave by January 29, 2013, or be "subject to immediate forcible removal and/or arrest."  The occupants were given until January 28, 2013, to file an appeal with the City clerk.  A timely appeal was filed.

On January 31, 2013, an administrative hearing was held before Administrative Hearing Officer Cassandra Webster.  Attorney Charles Hill from Iowa Legal Aid represented the appellees.  Appearing for the City were SuAnn Donovan, Zoning Enforcement Neighborhood Inspection Administrator with the City of Des Moines Community Development Department, and Roger Brown, Des Moines Deputy City Attorney.

At the hearing the City discussed the history of homeless people living under the bridges in Des Moines.  The City acknowledged it last pursued legal action in November 2008.  The City explained the 2008 action was prompted by the construction of "hooches" or small structures made out of plywood, one of which had caught fire.  As a result, the City removed eight individuals from a campsite.  In the spring and summer of 2011 the City removed two structures and three individuals from the levee north of Gray's Lake.  That year the City spent $25,000 in the removal of twenty abandoned campsites and contributed $165,000 in an effort to secure housing for the homeless.

---

[1] The Des Moines municipal code defines "encroachment" as: "*Encroachment*, in addition to its usual meaning, means any tent or other material configured or used for habitation or shelter, architectural projection, chimney, stairway, platform, step, railing, door, grate, vault, sign, banner, canopy, marquee, awning, newsrack, trash container, bench, areaway, obstruction, opening or structure."  Des Moines Municipal Code, Art. VIII., § 102-596.

The City stated it had received several complaints about the individuals living under the bridge. A recreational trail passes under the bridge. Users of the trail reported verbal assaults, being frightened by the homeless, instances of panhandling, the unsightliness of the camps, and the accumulation of junk under the bridge. The City inspected the camps and found unsanitary conditions and unsafe heating methods creating a fire hazard. The location of the camps would also make it difficult for first responders to provide prompt services.

Des Moines Fire Marshall, Tom Patava, was called as a witness. He discussed the safety concerns caused by homeless persons using propane, camp fires/fire pits, or homemade wood burners for heat. Patava voiced concerns about the close proximity of the heat sources to the flammable heating materials the individuals use for shelter and bedding. He also noted, because of these problems, emergency responders are twenty times more likely to respond to a fire at one of the campsites versus a single family home.

Next, Cody Christensen, the deputy building official in the community development department, testified about the safety concerns unique to the camps. Christensen stated the city code sets a minimum standard of living for residents of the city and Christensen opined that since the homeless individuals inhabited the camps on a long-term basis, the city housing codes should also apply to their structures. However, these structures do not meet the housing standards set by the City. In addition to creating a fire hazard, the camps fail to provide adequate cooking, bathing, or restroom facilities.

Iowa Legal Aid attorney Charles Hill offered general information about homelessness. Hill argued the City did not give proper notice, the City's action was ultra vires, and the homeless persons he represented acted out of necessity due to the lack of suitable housing. Hill noted the local homeless shelter, which has a 150-bed capacity, exceeded its capacity during the January 2013 cold snap while providing shelter for 180 individuals. Hill faults the City for not providing a homeless shelter of sufficient size, and also for the general lack of affordable housing in Des Moines. Hill based his necessity argument on the Restatement (Second) of Torts, section 197, which states an individual is privileged to enter and remain on the land of another if it is reasonably necessary to prevent serious harm to the individual or his chattel. Finally, Hill remarked that the City's officials had visited the campsite on numerous occasions since the appellees began living there. Other than the City's officials advising the appellees about the safety hazards, the officials did not ask the appellees to leave the campsite until the notice was posted in January 2013.

Hill also presented the testimony of Eric Randall, one of the appellees and a resident at the campsite. Randall testified the local homeless shelter was over its capacity, and he did not view the shelter as a viable living space. He stated that if he went to the shelter, given the over-capacity, he may have to sleep on a hard bench or in a chair. Randall believes his campsite is more comfortable than the shelter, the campsite is tidy, and the residents have implemented a system for trash disposal. Randall highlighted an additional problem—he would have to leave his possessions if he went to the shelter as the shelter does not provide

storage space. Randall testified further, if he and the others had to leave within the ten days mandated by the City, they would not have sufficient time to remove their possessions, leaving them with no choice but to stay under the bridge. Finally, Randall stated that he could not think of any injury caused to the City by his presence under the bridge.

Deidre Henriquez, the Program Manager for the Advocacy Department at Primary Health Care Outreach, testified on behalf of the appellees. She provided a brief overview of homeless camps in Des Moines, stating camps have existed dating back to at least 1983 when Drake University Professor Dean Wright began keeping records on the homeless population in Des Moines. Henriquez personally began observing homeless camps in 2001. She confirmed the City does have a homeless shelter with fifty beds for women and 100 beds for men. During the week the City posted the notice, about 170 people were staying at the shelter. The shelter did accommodate the over-capacity individuals by allowing them to sleep on chairs or benches. Henriquez opined that increasing the number of individuals at the shelter would lower the quality of services provided to the homeless.

The hearing concluded with closing statements by counsel. The City discussed the homeless problem in the United States, but emphasized the present hearing was about individuals living in a dangerous situation. The present situation placed the City in the position of an unwilling landlord to the homeless. The City claimed the defense of necessity does not apply as there was no imminent threat of bodily harm. Finally, the City indicated it had been

more than fair, and with the winter conditions, the chance of harm to the appellees and first responders is so apparent it prompted the City to take action.

The appellees reasserted the necessity defense, claiming the cold weather created imminent harm if they were forced to relocate and faulted the City for a decade-long policy of acquiescing and allowing people to live under the bridges while failing to provide other suitable housing.

The hearing officer entered an order on February 11, 2013, ruling against the City. In the ruling, the hearing officer discussed the applicable city code provision dealing with encroachments and the December 7, 2012 amendment to the code. The amendment added "tent or other material configured or used for habitation or shelter" to the definition of items constituting an "encroachment" under code section 102-596. Also amended was section 102-615, which acted to limit the scope of a hearing on appeal from an encroachment removal action by the City, or to allow for immediate removal without notice if the encroachment "unreasonably endangers the safety of persons or property."

In analyzing the appellees' necessity argument and the applicable case law, the hearing officer relied on *State v. Walton*, 311 N.W. 2d 113 (Iowa 1981), for guidance on the defense of necessity, as well as several California criminal cases: *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated* 505 F.3d 1006 (9th Cir. 2007); *Tobe v. City of Santa Anna*, 892 P.2d 1145 (Cal. 1995); *In re Eichorn*, 81 Cal. Rptr. 2d 535 (Cal. Ct. App. 1998). These cases generally dealt with homeless persons who raised the defense of necessity after being charged with criminal trespass. In allowing the necessity defense herein,

the officer concluded the lack of available beds in the shelter and the cold weather created a necessity for the appellees to continue residing under the bridge.

The City petitioned the district court for a writ of certiorari. The City requested the court sustain the writ, annul the defense of necessity, and allow the City to remove the encroachments. A hearing on the writ was held on August 30, 2013. At the hearing, the City again claimed the appellees failed to prove the defense of necessity since there was no emergency when the appellees first built their encroachments in the warmer months. The appellees claimed the elements of a necessity defense, as set out in *Walton* and the Restatement (Second), were satisfied. They noted the City amended the encroachment ordinance four weeks before the City posted the notices, which occurred during the cold winter months. The appellees also discussed the lack of reasonable alternative living arrangements. Finally, the appellees claimed their right to survive outweighed the City's property rights, claiming because there was no other place to stay the defense of necessity was satisfied.

In upholding the decision of the hearing officer, the district court relied on *Walton* and the Restatement (Second) of Torts to find the appellees satisfied the defense of necessity. Given the limited jurisdiction granted to the district court by Iowa Rule of Civil Procedure 1.1411,[2] annulling or sustaining the writ, the district

---

[2] Iowa Rule of Civil Procedure 1.411 provides:
> Unless otherwise provided by statute, the judgment on certiorari shall be limited to annulling the writ or to sustaining it, in whole or in part, to the extent the proceedings below were illegal or in excess of

court declined to offer a time frame or circumstance that could act to end the appellees' defense of necessity.

The City appealed, claiming the district court erred in upholding the hearing officer's allowance of the defense of necessity. The City asks this court to remand to the trial court with instructions to sustain the petition for writ of certiorari and to order the removal of appellees' encroachments.

## II.    STANDARD OF REVIEW

This case comes to us from the district court's ruling on the City's petition for writ of certiorari from the hearing officer's order. We review a certiorari action for the correction of errors at law. *Meyer v. Jones*, 696 N.W.2d 611, 613–14 (Iowa 2005). A certiorari action may be asserted by a party when authorized by a statute or when an "inferior tribunal, board, or officer" exceeded its jurisdiction or otherwise acted illegally in executing judicial functions. Iowa R. Civ. P. 1.1401; *Meyer*, 696 N.W.2d at 614. An inferior tribunal commits an illegality if the decision violates a statute, is not supported by substantial evidence, or is unreasonable, arbitrary, or capricious. *Bowman v. City of Des Moines Mun. Housing Agency*, 805 N.W.2d 790, 796 (Iowa 2011). Evidence is substantial "when a reasonable mind could accept it as adequate to reach the same findings." *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys.*, 526 N.W.2d 284, 287 (Iowa 1995). "'If the district court's findings of fact leave the reasonableness of the [hearing officer's] action open to a fair difference of opinion, the court may

jurisdiction. The judgment shall prescribe the manner in which either party may proceed, and shall not substitute a different or amended decree or order for that being reviewed.

not substitute its decision for that of the [hearing officer].'" *Helmke v. Bd. of Adjustment*, 418 N.W.2d 346, 347 (Iowa 1988) (quoting *Weldon v. Zoning Bd.*, 250 N.W.2d 396, 401 (Iowa 1977)).

Our rules of civil procedure provide that "[u]nless otherwise specially provided by statute, the judgment on certiorari shall be limited to sustaining the proceedings below, or annulling the same wholly or in part, to the extent that they were illegal or in excess of jurisdiction." Iowa R. Civ. P. 1.1411. Illegality exists within the meaning of the rule when the findings upon which the hearing officer based her conclusions of law do not have evidentiary support or when the court has incorrectly applied the proper rule of law. *Fisher v. Chickasaw Cnty*, 553 N.W.2d 331, 334 (Iowa 1996). We presume the hearing officer properly performed her duty under the law, unless clear evidence to the contrary appears. *Petersen v. Harrison Cnty. Bd. of Supervisors*, 580 N.W.2d 790, 793 (Iowa 1998). The burden of showing illegality rests upon the asserting party. *Id.*

## III.   ANALYSIS

The City claims the district court erred in allowing the defense of necessity. The modern construction of the necessity defense has not been applied in the civil context in Iowa.[3]  In *Walton* our supreme court discussed the criminal defense of necessity:

---

[3] The appellees claim *Bradshaw v. Frazier*, 85 N.W. 752 (Iowa 1901), was the first instance of the necessity defense in Iowa. *Bradshaw* concerned an appeal to recover damages for an abuse of process. 85 N.W. at 753. The case centered on a dispute between a landlord and tenant resulting in an eviction action. *Id.* at 752–53. The tenant's daughter had the measles; the evidence showed the landlord was aware of her illness. *Id.* After the tenant and his family were evicted they waited in the cold

> The rationale of the necessity defense lies in defendant being required to choose the lesser of two evils and thus avoiding a greater harm by bringing about a lesser harm. At least one commentator has suggested the following factors as a framework for analysis where the defendant is not personally at fault in creating the situation calling for the necessity to make a selection: (1) the harm avoided, (2) the harm done, (3) the defendant's intention to avoid the greater harm, (4) the relative value of the harm avoided and the harm done, and (5) optional courses of action and the imminence of disaster.

*Walton*, 311 N.W.2d at 115 (citation omitted).

In *Walton*, the court found the defense of necessity inapplicable for a defendant, Walton, who shot a woman after she threatened him. *Id.* The defense failed because the threat to the defendant did not create an imminent necessity for the shooting. *Id.* "The necessity defense does not apply except in emergency situations where the threatened harm is immediate and the threatened disaster imminent. The defendant must be stripped of options by which he or she might avoid both evils." *Id.* Further, the criminal defense of necessity has been raised in only a few other cases in Iowa.[4] *See e.g.*, *State v.*

---

September weather for an hour before they could take a carriage ride five miles to a relative's house. *Id.* at 753. The daughter died nine days after the move. *Id.* The court concluded the exposure to the cold caused the daughter's subsequent death. *Id.* The court ruled an abuse of process had occurred and held against the landlord. *Id.* "It is an abuse of lawful process 'if, after arrest upon civil or criminal process, the party arrested is subjected to unwarrantable insult or indignities, is treated with cruelty, is deprived of proper food, or is otherwise treated with oppression and undue hardship.'" *Id.* (citation omitted). We find this case unpersuasive in the present controversy. *Bradshaw* is an abuse-of-process case and inapplicable here.

[4] The appellees also cite to *In re Eichhorn*, 69 Cal. App. 4th 382 (Cal. Ct. App. 1998). In *Eichhorn*, a homeless individual was convicted of a misdemeanor under a city ordinance banning sleeping in public areas. 69 Cal. App. 4th at 385. The homeless shelters were above capacity the night the individual received the citation for sleeping in a public area. *Id.* At the lower court level, the court did not allow an instruction on the necessity defense. *Id.* On appeal, the appellate court cited the following considerations for a criminal necessity defense: "to prevent a significant evil, (2) with no adequate alternative,

*Bonjour*, 694 N.W.2d 511, 514–15 (Iowa 2005) (holding a medical necessity defense is not available as a defense to manufacturing marijuana); *Planned Parenthood of Mid-Iowa v. Maki*, 478 N.W.2d 637, 640 (Iowa 1991) (stating "[t]he necessity defense is generally not available to excuse criminal activity by those who disagree with the policies of the government"); *State v. Reese*, 272 N.W.2d 863, 865 (Iowa 1978) (holding the defense of necessity inapplicable for an inmate who escaped from prison to avoid possible attack or death); *State v. Ward*, 152 N.W. 501, 502–03 (Iowa 1915) (holding the defense of necessity applicable to defendant who unlawfully killed a deer as it ate his crops).

Section 197 of the Restatement (Second) of Torts provides guidance on the defense of necessity. That section describes "Private Necessity" as:

> (1) One is privileged to enter or remain on land in the possession of another if it is or reasonably appears to be necessary to prevent serious harm to
>> (a) the actor, or his land or chattels, or
>> (b) the other or a third person, or the land or chattels of either, unless the actor knows or has reason to know that the one for whose benefit he enters is unwilling that he shall take such action.
>
> (2) Where the entry is for the benefit of the actor or a third person, he is subject to liability for any harm done in the exercise of the privilege stated in Subsection (1) to any legally protected interest of the possessor in the land or connected with it, except where the threat of harm to avert which the entry is made is caused by the tortious conduct or contributory negligence of the possessor.

---

(3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency." *Id.* at 389. The court held the lower court should have allowed the jury to receive an instruction on the defense of necessity. *Id.* at 390–91. The California court did not state if the defense of necessity applied to the individual's situation, though it did note "reasonable minds could differ whether defendant acted to prevent a 'significant evil'" by sleeping in public and avoiding the "ill effects" that could arise from sleep deprivation. *Id.* at 389–90.

Restatement (Second) of Torts § 197 (1965). Section 197 is followed by comments and illustrations used to clarify the rule. Most relevant to this appeal are comments (a) and (b) of subsection 1:

> *a.* The privilege stated in this Subsection exists only where in an emergency the actor enters land for the purpose of protecting himself or the possessor of the land or a third person or the land or chattels of any such persons. Furthermore, the privilege must be exercised at a reasonable time and in a reasonable manner. Although the actor is subject to liability for harm done in the unreasonable exercise of the privilege stated in this Section (see § 214), in so far as his original entry was privileged, he is not liable for such entry, or for acts done prior to such unreasonable conduct, except as stated in Comment *i.*
> *b. Acts done for self-protection.* Where the actor is acting for the protection of himself or his belongings, the privilege stated in this Subsection permits him to enter another's land to save himself or his property, or to remove his chattel which is lawfully there, in order to save it from a threatened danger. It also permits one already on the land to remain there to avoid a threatened danger to himself or to leave his chattel there under like circumstances.

*Id.* The following illustration, from comment 1(b)(4), demonstrates the right of private necessity for self-protection:

> On a very cold winter night A, visiting at B's dwelling, is overcome by an attack of illness which leaves him helpless and unable to take care of himself. A is privileged without liability to remain in B's house until arrangements can be made to take him to a place where he will not be exposed to danger from the weather.

While there are no Iowa cases addressing section 197, other states have addressed this section in a somewhat similar context. In *Benamon v. Soo Line Railroad Co.*, 689 N.E.2d 366, 370 (Ill. App. Ct. 1997), the plaintiff claimed he hid on a railroad overpass out of necessity to escape a gang of boys who had been chasing him. The court held the defense of necessity inapplicable. *Benamon*, 689 N.E.2d at 370. Echoing section 197, the court found the plaintiff's actions

were not exercised at a reasonable time or in a reasonable manner in light of all the circumstances. *Id.* The court noted the potential threat of harm posed by hiding on the railway was not outweighed by the threat posed by the boys. *Id.* at 371. Further, the court noted the plaintiff had other less dangerous options available to him: "[G]iven the existence of less dangerous options, and given the known risks associated with the railroad tracks, that [the Plaintiff's] presence on or near those tracks was not reasonable and thus his presence on those tracks was not a private necessity . . . ." *Id.*

Although Iowa courts have not addressed the defense of necessity in a civil action, we adopt section 197 of the Restatement (Second) of Torts, while also considering the factors articulated by our supreme court in *Walton.* The defense of necessity allows an individual to enter and remain on another's property without permission in an emergency situation when such entry is reasonably necessary to prevent serious harm. *See* Restatement (Second) of Torts § 197. The privilege must be "exercised at a reasonable time and in a reasonable manner." *Id.* With these considerations in mind, we review the appellees' circumstances.

The appellees began living under the Martin Luther King Jr. bridge in March 2012. The Des Moines municipal code was then amended in December 2012, and the appellees were given notice to move their encroachments a few weeks after the change. The record shows a typical Iowa winter occurred in 2013—meaning below-freezing temperatures. That winter, the Des Moines homeless shelter remained at or above capacity, especially during the cold snap

when the appellees were ordered to vacate. While the shelter was above capacity, evidence shows the appellees would not have been turned away had they sought shelter. In their reasoning not to go to the shelter, the appellees cited the potential uncomfortable nature of the shelter and the fact they did not want to leave their possessions behind. They claimed they needed their possessions to keep warm and they also claimed their campsite was more comfortable than the shelter.

The City dedicated much of its case to demonstrating the potential dangers associated with living under the bridge. The City presented the testimony of the Des Moines fire marshal who noted the fire department was twenty times more likely to respond to an emergency at a homeless encampment due to the homeless individuals' methods for heating their camps than to a residence. Homeless individuals' heating sources use an open flame fueled by wood or propane, and the individuals use highly flammable materials like canvas and wood to create their shelters. The City submitted evidence of a different homeless camp that had burned due to an unsafe heating source.

With these facts in mind, we ask whether substantial evidence supports the defense of necessity. Factors weighing against the necessity defense are the dangers associated with the individuals' choice of heating sources, the threat to the individuals' lives in the event of a fire, and the threat to first responders' lives in responding to a fire under the bridge. Factors supporting the necessity defense are the individuals' desire not to attend the crowded homeless shelter, the desire to sleep in a familiar place and not on a hard plastic bench, and the

desire to keep their possessions. Listing these factors reveals a lack of substantial evidence to prove the defense of necessity. In good conscience, we cannot hold the appellees' decision to remain in their encroachments under the bridge—endangering their lives and the lives of first responders—was reasonably necessary to prevent the harm of staying in a crowded shelter and leaving their possessions unattended. Moreover, the cold weather is not an emergency as anticipated under section 197. Section 197 illustrates emergency situations as a "violent storm" suddenly overtaking a ship forcing it to moor at another's dock, an airplane pilot forced to land in a field under a reasonable belief he must land to protect himself, or an individual who must take refuge at another's home due to "an attack of illness." *See* Restatement Second § 197 cmt. b (1–4). The factual scenario presented by the appellees is not sufficient evidence of a situation demonstrating an emergency creating a risk of serious harm—the encroachments were constructed in the warmer months, and in the cold months a warm and safe shelter was available. The appellees' decision to build the encroachments and remain under the bridge was not reasonably necessary in light of all the circumstances.[5]

We are sensitive to the public policy arguments raised by Iowa Legal Aid. Homelessness is both a local and a national problem. However, it is not our role to rewrite the law and substitute our views of public policy. *State v. Wagner*, 596

---

[5] We limit our ruling to only apply to the homeless individuals' encroachments, as defined by 102-615 of the Municipal Code of the City of Des Moines. The City has not proven it has the right, pursuant to 102-615, to remove the homeless individuals and their personal belongings.

N.W.2d 83, 88 (Iowa 1999).  The Iowa judicial system is not the proper place, in this instance, to change the City of Des Moines' policy concerning the encroachments of the homeless persons residing within its borders.

We conclude, under the specific circumstances of this case, the district court erred in ruling substantial record evidence supported the hearing officer's finding the defense of necessity applied to the homeless individuals' situation. Accordingly, we reverse the judgment of the district court and remand for entry of an order sustaining the writ of certiorari.

**REVERSED AND REMANDED WITH DIRECTION.**