**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190336-U

Order filed February 21, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| TERESA DONLEY, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Peoria County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| CRAIG PROPERTIES, INC., KRISTIE | ) | |
| HUBBARD, DEVERAUX HUBBARD, | ) | Appeal No. 3-19-0336 |
| MASTERS BROTHERS INC. and "JOHN | ) | Circuit No. 16-L-50 |
| DOE," | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Craig Properties, Inc., | ) | The Honorable |
| | ) | Michael P. McCuskey, |
| Defendant-Appellee). | ) | Judge, Presiding |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justices Carter and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Trial court properly granted summary judgment to defendant general contractor in negligence action filed by plaintiff who was injured on construction site where defendant had no notice plaintiff would be.

¶ 2    Plaintiff Teresa Donley was injured on property owned by defendants Kristie Hubbard and

Deveraux Hubbard, where a home was being constructed by general contractor Craig Properties,

Inc. Donley sued the Hubbards, Craig Properties, Inc., one known subcontractor (Masters Brothers Inc.) and one unknown subcontractor (John Doe). Defendants filed motions to dismiss and motions for summary judgment. The trial court granted nearly all of defendants' motions, leaving only one count of negligence against Craig Properties, Inc. Craig Properties, Inc. later filed a motion for summary judgment, which the trial court granted. Donley appeals the trial court's summary judgment order in favor of Craig Properties, Inc., arguing that it was liable for negligence as the possessor of the property and as the general contractor of the construction project. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Donley met Kristie Hubbard in or around 2000. Donley and Kristie worked together for several years and became friends. In the summer of 2014, Kristie informed Donley that she and her husband were going to have a house built in Peoria. Shortly after that, Kristie gave Donley the address to the property where the home was to be built.

¶ 5        On September 15, 2014, Kristie and her husband, Deveraux, entered into a contract with Craig Properties, Inc. for the construction of a home at 6819 N. Wilshire Drive in Peoria. Pursuant to the contract, Craig Properties, Inc. was to deliver possession of the property to the Hubbards at the time of the closing when construction was complete. The contract listed the closing date as May 1, 2015. Paragraph 28 of the construction contract provided as follows:

> "28.    RIGHT OF ENTRY. From and after the execution and acceptance of the Agreement and prior to the closing, Buyer shall have the right to enter and inspect the Residence at any time, provided that such entry does not unreasonably interfere with Builder's construction of the Residence. Builder shall provide Buyer with the key or keys to the Residence when necessary. Buyer also has the right to designate one or more inspectors to examine the Premises. The Builder shall allow the inspector(s) to enter the Premises at any necessary time."

¶ 6        Craig Properties, Inc., is owned by Donna and Patrick Craig. Craig Properties, Inc. hired several subcontractors to help construct the Hubbards' home, including Masters Brothers Inc.,

which installed the furnaces and ducts, and Wiley Holt, who framed the house and constructed the stairway from the main level to the basement. Craig Properties, Inc. received bids from its subcontractors but did not have written contracts with them.

¶ 7    In or around October 2014, Donley and her mother, Alberta Thomas, visited the Hubbards' property to see the progress of the home construction. While at the home, Donley took photos, which she texted to Kristie. Shortly after that, Kristie sent an email to Donley with blueprints of the home and asked Donley and her father to look at them and give her advice. Kristie knew that Donley's father had experience building houses and had developed a subdivision. After reviewing the plans, Donley and her parents suggested that stairs be added to the back deck and that water spigots and outdoor electrical outlets be added to the home.

¶ 8    On January 10, 2015, Donley and Thomas visited the Hubbards' property again. No one else was on the property at the time. The house had been framed but had no doors or windows. Oriented Strand Board (OSB) flooring was present throughout the main floor. Donley did not tell the Hubbards she was stopping by that day. She happened to be in the area and wanted to see the progress of the construction. She planned to take photographs and use them to make a scrapbook for Kristie.

¶ 9    While taking photographs inside the home, Donley walked on OSB covering the stairway to the basement. When she did so, she broke through the flooring, landed on a concrete slab in the basement and suffered serious injuries. There were no warning signs, caution tape or barricades around the area where Donley fell. Donley did not know that the OSB she walked on was covering a stairway.

¶ 10   In November 2017, Donley filed an eight-count amended complaint against multiple defendants. Counts I through IV were against Craig Properties, Inc. and alleged (1) negligence, (2)

willful and wanton conduct, (3) voluntary undertaking, and (4) negligent hiring and retention again. In her negligence claim, Donley alleged that Craig Properties, Inc. owed a duty "to exercise reasonable and ordinary care to ensure those who were in and around the property to be free from hazards that could cause bodily harm." In count V, Donley alleged negligence against the Hubbards. In counts VI and VII, Donley alleged negligence and willful and wanton conduct against Masters Brothers Inc. Count VIII alleged negligence against "John Doe" for placing the OBS on top of the stairway opening.

¶ 11        Between 2017 and 2019, parties and witnesses provided deposition testimony. Donna Craig, president of Craig Properties, Inc. testified that Craig Properties, Inc. was in possession of the property located at 6819 N. Wilshire Drive on January 10, 2015. She did not know who placed the OSB over the stairway at the property. She agreed that it was standard in the construction industry to place plywood or boards over a stairwell in the winter to trap the heat in the basement. Donna never spoke to Donley. Donley never asked her for permission to be on the Hubbards' property during construction. The Hubbards never informed Donna that Donley would be on the property on January 10, 2015.

¶ 12        Patrick Craig, vice president of Craig Properties, Inc. testified that he and his wife are the only employees of Craig Properties, Inc. Patrick testified that he and Donna regularly went to the Hubbards' home while it was being built to inspect the progress. He was at the property frequently but not every day. He inspected the work completed by subcontractors to make sure it was done properly. He did not know which subcontractors were at the property the day or week before Donley's fall and did not know who put the OSB flooring over the stairway. Patrick was out of town on an eight-day vacation on January 10, 2015. He examined the property the day before he

left for vacation. The plywood was over the stairway and nailed down at that time. He thought it had been there for several months.

¶ 13      Patrick received a phone call about Donley's accident while he was on vacation. He returned to the property about a week later, after he returned from vacation. Patrick did not know how often the Hubbards came to see their property but said they could do so any time. Patrick knew Donley was a friend of the Hubbards who gave them homebuilding advice. Donley was not an inspector. Patrick knew that Donley was at the property prior to January 10, 2015, but he never saw her. The Hubbards never asked Patrick if Donley could enter the property.

¶ 14      Kristie Hubbard denied telling Donley that she could go to the construction site anytime. Donley did not ask Kristie for permission to go to the property on January 10, 2015. Kristie never asked Donna or Patrick Craig if Donley could be on the property while the house was being constructed. Kristie did not ask Donley to inspect her home. Donley was not an inspector and did not have the qualifications necessary to inspect her home.

¶ 15      Deveraux Hubbard denied giving Donley permission to be on the property on January 10, 2015. According to Deveraux, Donley was not an inspector, and he never designated her as an inspector to Craig Properties, Inc.

¶ 16      Donley testified that she did not know who had legal title to the home located at 6819 N. Wilshire Drive on January 10, 2015, but assumed that Kristie had the right to allow people inside the house. After Donley and her mother visited the property in or around October 2014, Kristie asked Donley for help in the home-building process and told Donley that she was welcome to go to the property anytime. Donley never received permission from anyone other than Kristie to go on the property. Donley did not inform Kristie that she was going to the property on January 10, 2015. Donley never spoke to Donna or Patrick Craig before January 10, 2015. Donley never asked

anyone from Craig Properties, Inc. for permission to be at the property. Donley thought she had permission from Kristie to be on the property on January 10, 2015. Donley admitted she is not an inspector.

¶ 17 Wiley Holt was hired as a subcontractor by Craig Properties, Inc. to frame the Hubbards' home. He also built the stairway from the first floor to the basement of the property and installed a railing. He did not place plywood or boards over the opening of the stairs. Several weeks after Holt installed the stairway and railing, Craig Properties, Inc. called him to repair the stairs after Donley's fall. When Holt returned to the property, the railing was gone. Holt did not remove the railing.

¶ 18 John Peak, HVAC project manager for Masters Brothers Inc., testified that it is normal to place plywood over a basement stairway in the winter when building a home to keep heat in the basement. Peak testified that neither he nor anyone from his company placed the plywood over the stairway at the Hubbards' home. He had "no idea" who put the plywood there.

¶ 19 Donley disclosed Ted Clark as an expert witness in construction. Clark stated that it is a standard practice in the construction industry to cover a basement staircase with a board during winter. The railing Holt installed was intended "to prevent people from falling into the stairwell." Clark assumed that Patrick Craig placed the OSB over the staircase and removed the railing because he was the general contractor. Clark admitted that he had no personal knowledge of Patrick placing the board over the stairs or removing the railing, and no one reported seeing Patrick or Donna do so. Clark stated that general contractors delegate most of the work in building a house to subcontractors. He said it is reasonable for a general contractor to rely on subcontractors to perform their work properly.

¶ 20 Craig Properties, Inc. filed a motion to dismiss Donley's complaint, and the Hubbards and Masters Brothers Inc. filed motions for summary judgment. The trial court entered orders (1) dismissing all but the negligence count against Craig Properties, Inc., (2) granting summary judgment to the Hubbards, and (3) granting summary judgment to Masters Brothers Inc.

¶ 21 Thereafter, Craig Properties, Inc. filed a motion for summary judgment on the one remaining count of negligence. The trial court entered an order granting Craig Properties, Inc.'s motion for summary judgment, finding "no genuine issues of fact."

¶ 22                                                II. ANALYSIS

¶ 23 A trial court may grant summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions and affidavits in the light most favorable to the nonmoving party. *Benamon v. Soo Line R.R. Co.*, 294 Ill. App. 3d 85, 87 (1997). Although a plaintiff need not prove her case at the summary judgment stage, she must present evidentiary facts supporting all elements of her claim. *Id*. We review *de novo* a trial court's decision to grant a motion for summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 24 To prevail in a negligence action, a plaintiff's complaint must set forth facts establishing (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). "A defendant in a negligence suit is entitled to summary judgment if he can demonstrate that the plaintiff has failed to establish a factual basis for one of the required elements of a cause of action for negligence." *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 658 (1993).

¶ 25     The existence of a duty under a particular set of facts is a question of law for the court to decide. *Choate*, 2012 IL 112948, ¶ 22. If no duty exists, there can be no recovery for negligence. *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 837 (1999).

¶ 26                          A. Duty as Possessor of Property

¶ 27     An owner or occupier of land owes a duty of reasonable care to all entrants upon the premises except trespassers. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 24. "A trespasser 'is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.'" *Benamon*, 294 Ill. App. 3d at 89 (quoting Restatement (Second) of Torts § 329, at 171 (1965)). "The law does not require a landowner to assume that a trespasser will expose himself to injury on the landowner's property." *Lange v. Fisher Real Estate Development Corp.*, 358 Ill. App. 3d 962, 966 (2005). Furthermore, landowners are not required to keep their land in any particular condition to promote the safety of trespassers. *Id*. "[A]n intruder who comes on the possessor's land without his permission has no right to demand that the possessor provide him with a safe place to trespass." *Rodriguez v. Norfolk and Western Ry. Co.*, 228 Ill. App. 3d 1024, 1039 (1992).

¶ 28     In general, a landowner owes no duty to trespassers, except to refrain from willfully and wantonly injuring them. *Choate*, 2012 IL 112948, ¶ 25. However, there are exceptions to the general rule limiting a landowner's duty to trespassers. *Id*. ¶ 27. Under one exception, "if a landowner knows of or reasonably anticipates the presence of a trespasser in a place of danger, the landowner should be held to a duty of ordinary care to protect and/or warn the trespasser." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 447-48 (1992). In order to establish a duty under this exception, the trespasser must show that landowner knew or had reason to know of the trespasser's presence on the property. *Benamon*, 294 Ill. App. 3d at 94. The plaintiff can establish the

landowner's knowledge by showing that trespassers frequented the area where the plaintiff was injured. See *id*.

¶ 29 Here, Craig Properties, Inc. was in possession of the Hubbards' home on January 10, 2015. Donley never sought nor received permission from anyone employed by Craig Properties, Inc. to be on the property on January 10, 2015. Neither Patrick nor Donna Craig were ever told that Donley would be coming to the property. Donley had been on the property once prior to January 10, 2015, which Patrick Craig knew. Neither Craig Properties, Inc. nor the Hubbards knew that Donley would be on the property on January 10, 2015. Donley was not an inspector hired by the Hubbards to examine the property.

¶ 30 Here, pursuant to the contract between Craig Properties, Inc. and the Hubbards, Craig Properties, Inc. was in possession of the property on January 10, 2015. At the time, only the Hubbards and one or more individuals designated as inspectors by the Hubbards had the right to enter the property. Donley was not an inspector. Thus, she had no right to be on the property on January 10, 2015, without permission from Craig Properties, Inc.

¶ 31 The record shows that Donley never received permission from Craig Properties, Inc. to be on the property on January 10, 2015, or any other date. Furthermore, Craig Properties, Inc. had no reason to know that Donley would be on the property on January 10, 2015. While Donley came onto the property in or around October 2014, that one visit nearly three months earlier was insufficient to establish that Craig Properties, Inc. knew or had reason to know that Donley would return to the property on January 10, 2015, or any other time. Furthermore, there was no evidence that other trespassers frequented the property.

¶ 32 Under the facts of this case, Donley was a trespasser. As such, the only duty Craig Properties, Inc. owed to her was to refrain from willful and wanton misconduct. See *Choate*, 2012

9

IL 112948, ¶ 25. In her negligence claim, Donley did not allege that Craig Properties, Inc. committed willful and wanton conduct but, instead, alleged that it breached its duty of reasonable care. Craig Properties, Inc. owed no duty of reasonable care to Donley. Donley failed to establish the existence of a duty that Craig Properties, Inc. owed to her as possessor of the property upon which she was injured. Thus, her negligence claim fails. See *Rangel*, 307 Ill. App. 3d at 837.

¶ 33                                B. Duty as General Contractor

¶ 34        "As a general rule, one who employs an independent contractor is not liable for the acts or omissions of the independent contractor." *Wilkerson v. Paul H. Schwendener, Inc.*, 379 Ill. App. 3d 491, 493 (2008). A recognized exception to this rule is found in section 414 of the Restatement (Second) of Torts, which states: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

¶ 35        As set forth above, Craig Properties, Inc. did not owe a duty of reasonable care to Donley because she was a trespasser. See *Choate*, 2012 IL 112948, ¶ 24. Because section 414 applies only when a general contractor "owes a duty to exercise reasonable care," and Craig Properties, Inc. owed no such duty to Donley, Donley cannot establish liability against Craig Properties, Inc. under section 414 of the Restatement (Second) of Torts.

¶ 36        Even if Craig Properties, Inc. owed a duty of reasonable care to Donley, section 414 would still not apply. For section 414 to apply, the general contractor "must have retained at least some degree of control over the manner in which the work is done." Restatement (Second) of Torts, § 414, Comment C, at 388 (1965). When the evidence shows that the general contractor retained only a general right of supervision over its subcontractors but did not direct the details of their

10

work, the general contractor owes no duty to the plaintiff and summary judgment should be entered in favor of the general contractor. See *Joyce v. Mastri*, 371 Ill. App. 3d 64, 74-76 (2007); *Martens v. MCL Construction Corp.*, 347 Ill. App. 3d 303, 314-15 (2004); *Rangel*, 307 Ill. App. 3d at 838-39. No liability will be imposed on the general contractor unless the evidence shows he "retained control over the 'incidental aspects' of the independent contractor's work." *Rangel*, 307 Ill. App. 3d at 839.

¶ 37        Here, Craig Properties, Inc. hired subcontractors to perform various tasks related to the construction project. The subcontractors brought their own supplies and equipment and completed their jobs as they saw fit. Patrick and Donna Craig were at the construction site often, but not every day. The Craigs made sure that subcontractors performed their work properly, but they did not dictate how the work was to be completed. Under these facts, Craig Properties, Inc. did not retain the type of control required to impose a duty against Craig Properties, Inc. pursuant to section 414 of the Restatement (Second) of Torts. See *Rangel*, 307 Ill. App. 3d at 839.

¶ 38        Donley failed to establish that Craig Properties, Inc. owed her a duty of reasonable care as the possessor of the property where she was injured or as the general contractor of the construction project. Absent a duty, plaintiff's negligence claim fails. See *id*. at 837. The trial court properly granted summary judgment to Craig Properties, Inc.

¶ 39                                    III. CONCLUSION

¶ 40        The judgment of the circuit court of Peoria County is affirmed.

¶ 41        Affirmed.