CARRA CAMERON, Appellee, v. J. C. BRYAN *et al.*, Appellants.

1. **Personal Injury:** HORSE FRIGHTENED BY DOG: EXEMPLARY DAMAGES: PLEADING. In an action for damages for injuries sustained by reason of the plaintiff's horse being attacked by the defendant's dog on the public highway, whereby the horse was frightened and ran away, and the plaintiff was thrown upon a barbed wire fence, and injured, *held*, that an allegation in the petition that the defendants were the owners of the dog, and harbored and kept him "willfully, unlawfully and maliciously," with full knowledge of his vicious habits and practices, and made no effort to restrain him, nor to protect the public from his vicious attacks, was sufficient to support a recovery of exemplary damages, if established by the evidence. Whether proof of notice to the owner of the vicious character of the dog before the injury occurred is necessary to a recovery of actual damages in such case, *quære*.

2. ———: ———: REPUTATION OF DOG: EVIDENCE. Evidence of the general reputation of the dog, in such case, as being vicious and dangerous, is competent as tending to raise an inference that the owner had knowledge of his vicious propensities.

3. ———: ———: EVIDENCE OF PREVIOUS HABITS: PLEADING: VARIANCE. It being alleged in the petition that the dog was in the habit of attacking, biting, chasing and frightening teams, *held*, that evidence that the dog was habitually frightening teams by chasing, barking, biting, or in any other way, was admissible, although the traits proven were not just the same as those averred in the petition; and the right of the plaintiff to recover in such case is not affected by the fact that the evidence fails to show that the dog has before committed the kind of act of which the plaintiff complains.

4. ———: ———: INSTRUCTIONS TO JURY.  A cause will not be reversed in the supreme court because of technical objections to the charge of the trial judge to the jury, which could not have misled the latter in arriving at its verdict.

5. ———: ———: DAMAGES: VERDICT.  A verdict of fifteen hundred dollars in such case as damages for a lacerated wound on the side of the face and neck of a girl about eighteen years of age, causing a permanent scar and disfigurement of the face, and much pain and suffering, both mental and physical, and necessitating medical attendance to the value of seventy-five dollars, besides nursing and the usual care and attention, is not excessive.

*Appeal from Dallas District Court.*—HON. J. H. APPLE-GATE, Judge.

WEDNESDAY, OCTOBER 11, 1893.

ACTION at law to recover damages for a personal injury, which the plaintiff claims she received by reason of the attack of a vicious dog, belonging to the defendants, upon a horse driven by the plaintiff and her sister, by reason of which attack the horse ran away, and the plaintiff was thrown upon a barbed wire fence, and was seriously and permanently injured.   There was a trial by jury, and a verdict and judgment for the plaintiff. The defendants appeal.—*Affirmed.*

*Shortley & Harpel,* for appellants.

The general vicious character of the dog was not the real question involved, and the admission of evidence of his general character was erroneous.   It was only his character and habits as to committing acts similar to the one which is alleged to have caused

the accident and consequent injury that can be shown. *Keightlinger v. Egan*, 65 Ill. 236, 237; *Durrell v. Johnson*, 48 N. W. Rep. 891, 892. What people said about the dog chasing them in the road would neither tend to prove the fact that the dog was in the habit of attacking and biting animals being driven in the road, or that the defendants had notice that he was in the habit of so biting or attacking such animals. *Putney v. O'Brien*, 53 Iowa, 119. We can not presume from reputation the defendants' knowledge of a fact, and from such presumed knowledge infer knowledge of other and different acts, as this would be basing one presumption on another, which is not permitted. *United States v. Ross*, 92 U. S.; 283. "Presumptions must be based upon facts, and can not be drawn from other presumptions." 19 Am. and Eng. Encyclopedia of Law, 39 and note 3. See also page 56 and note 2; Wharton on Evidence [3 Ed.], par. 1226. The court's instruction that if the dog "was in the habit of running into the public highway and barking at and attacking * * * or if you find that he was in the habit of doing any of these acts complained of," and defendants had notice thereof, they would be liable for the injury, if the dog caused the accident complained of, was erroneous. The court could not go farther than to tell the jury it was evidence tending to show liability, rather than establishing it. *Durrell v. Johnson*, 48 N. W. Rep. 891, 892. The twelfth paragraph of the charge is erroneous for that it authorizes the jury to allow, as an element of compensatory damages, mental pain and anguish; while such damages should be allowed only in a proper case for exemplary damages. *Deppe v. C., R. I. & P. R'y Co.*, 36 Iowa, 52; *Johnson v. Wells, Fargo Co.*, 6 Nev. 224; *Carl v. C., R. I. & P. R'y Co.*, 63 Iowa, 428; *Fitzgerald v. C., R. I. & P. R'y Co.*, 50 Iowa, 79; *Jones v. Marshall*, 66 Iowa, 739; *Brown v. Allen*, 35 Iowa, 306; *Collins v.*

*Council Bluffs*, 35 Iowa, 436; *Paine v. C., R. I. & P. R'y Co.*, 45 Iowa, 573. The plaintiff in her petition did not ask for exemplary damages.

*White & Clarke*, for appellee.

Upon the theory that it was essential to the appellee's right to recover damages, that knowledge of the vicious character of the dog on the part of appellants must be shown, the dog's general reputation in the community as a vicious dog was admissible. Knowledge of a fact is often held to be inferable from general neighborhood reputation of it, and it has been so held in cases like the one at bar. *Fake v. Addicks*, 45 Minn. 37; 47 N. W. Rep. 450; *Mier v. Shrunk*, 79 Iowa, 19; *Lee v. Kilburn*, 3 Gray, 594. The fact that the dog was gotten and kept for the purpose of a watch dog is sufficient to warrant the inference that defendants knew that the dog possessed the qualities that would make him valuable as a watch dog. *Brice v. Bauer*, 108 N. Y. 428. A man can not keep a dog of vicious habits, whatever they may be, which endangers the safety of his neighbors. If from any of his acts or conduct, they, as reasonably careful and prudent persons, might have known of the vice, they would be responsible for his acts. The gist of the action is in the keeping of the animal with the vice producing the injury, with knowledge of it. It is immaterial what the vice is, so it causes the injury. *Schmid v. Humphrey*, 48 Iowa, 656; *Dochery v. Hutson*, 125 Ind. 102; *Graham v. Payne*, 24 N. E. Rep. 216; *Lyons v. Merrick*, 105 Mass. 71; *Marsel v. Bowmon*, 62 Iowa, 57; *Mier v. Shrunk*, 79 Iowa, 19; *Knowles v. Mulder*, 41 N. W. Rep. 896; *Brice v. Bauer*, 108 N. Y. 428; *Godeau v. Blood*, 52 Vermont, 251; *Rider v. White*, 65 N. Y. 54. It is not a question of "negligence," but a question of imputed knowledge, from proved facts which would have led reasonably careful persons to such

knowledge.   Appellants contend that compensatory damages, for mental pain and anguish can be allowed only in a proper case for exemplary damages.   Such is not the law in Iowa.   *Ferguson v. Davis Co.*, 57 Iowa, 601; *Lucas v. Flinn*, 35 Iowa, 9; *Parkhurst v. Mastellar*, 57 Iowa, 475; *McKinley v. C. & N. W. R'y Co.*, 44 Iowa, 314.   Exemplary damages are simply an element in damages, and are recoverable upon proof under a prayer for "damages."   *Gustafson v. Wind et al.*, 62 Iowa, 284.   If the dog was kept by the defendant with knowledge of the vicious habit in question, in utter willful and reckless disregard of the rights of others, the jury would have been authorized under the allegations of the petition to award exemplary damages. *White v. Spangler*, 68 Iowa, 225; *Reddin v. Gates*, 52 Iowa, 211; *McCord v. High*, 24 Iowa, 247; *Parkhurst v. Mastellar*, 57 Iowa, 480.   The damages allowed were not excessive.   Compensation is not only made for loss of time, for the broken cart, for physical pain, but for disfigurement, mental pain, humiliation and anguish, flowing from the wrongful act.   *W. & A. K'y Co., v. Young*, 7 S. E. Rep. 912; *Heddles v. C. & N. W. R'y Co.*, 77 Wis. 228; *Sherwood v. C. & W. M. R'y Co.* 82 Mich. 374.

ROTHROCK, J.—I.   It is not disputed that the defendants were the owners of the dog which it is claimed caused the injury of which the plaintiff complains.   The defendants reside on a farm in Dallas county, and their dwelling house is near a public highway. There is no question but that the plaintiff received a very severe injury by being thrown from a cart in which she was riding, onto a barbed wire fence; and the evidence shows without much question that the injury occurred by reason of the fright of the horse by the defendant's dog, and the evidence fully justified the

1. PERSONAL injury: horse frightened by dog: exemplary damages: pleading.

jury in finding that neither the plaintiff nor her sister was chargeable with any negligence which proximately contributed to the injury.

It is provided by section 1485 of the Code that, "it shall be lawful for any person to kill any dog caught in the act of worrying, maiming or killing any sheep or lambs or other domestic animal, or any dog attacking or attempting to bite any person, and the owner shall be liable to the party injured for all damages done by his dog, except when the party is doing an unlawful act." Much of the evidence in the case is directed to the question whether the dog of the defendants was a vicious and dangerous animal by reason of his propensity to attack and frighten teams driven past the defendants' premises, and whether the defendants had notice of such habits in the dog prior to the time that the plaintiff was injured. The court below appears to have been of opinion that a recovery could not be had for any amount, unless the defendants had notice of the vicious character of the dog before the injury occurred. It may be questioned whether this is the rule as to the actual damages, and it may be that the instructions to the jury on that feature of the case were more favorable to the defendants than they were entitled to. We do not determine that question, because the said instructions are the law of the case. And it may be further observed in this connection that it was averred in the petition that the defendants were the owners of the dog, and that they harbored and kept him "willfully, unlawfully, and maliciously," with full knowledge of the ferocious and vicious habits and practices of said dog, and made no effort to restrain him, or to protect the public from his vicious attacks. This laid the foundation for the recovery of exemplary damages, if the willful and malicious harboring of the dog could be established by the evidence. In view of these averments of the petition, the evi-

dence of the defendants' knowledge of the vicious propensities of the dog was proper. And we may say here that the objection of the appellants that the petition did not contain the necessary averments to recover punitive damages is not well taken. It was not necessary to do more than make a general claim for damages to which the plaintiff was entitled, actual as well as exemplary.

II. The plaintiff introduced evidence to the effect that the dog had the general reputation of "chasing people in the road," and "annoyed people passing in the road considerably," and that the "character of the dog did not seem to be very good." It is competent to show the general reputation of the animal as being vicious and dangerous as tending to raise an inference that the owner had knowledge of his vicious propensities. 1 Greenleaf on Evidence, section 101; *Meier v. Shrunk,* 79 Iowa, 17; *Murray v. Young,* 12 Bush, 337; *Keenan v. Hayden,* 39 Wis. 558.

2. ——: ——: reputation of dog: evidence.

III. We do not understand counsel to object so much to the admissibility of evidence of the general reputation of the animal, as that the traits of character developed by the evidence are not the same as those set forth in the petition. It is averred in the petition that the dog was in the habit of attacking, biting, chasing and frightening teams, and it is claimed that evidence that he would chase them in the road did not support the averments of the petition. This position does not appear to us to be well taken. Evidence that the dog was habitually frightening teams by chasing, barking, biting, or in any other way, was competent; and the same thought is sufficient answer to the claim that the verdict is contrary to the evidence, because there is no evidence that before the injury the dog was in the habit of committing the act for which the plain-

3. ——: ——: evidence of previous habits: pleading: variance.

tiff alleges the defendants are liable. It is claimed by the plaintiff, and there is abundant evidence to establish the fact, that the dog not only chased and ran at the horse, but that he grabbed and bit him. Now, it is true that there was no evidence that the dog had before that actually bit a team, or a horse in a team, but there was abundant evidence that he was just that kind of a howling nuisance which is a menace to the traveling public, and a terror to restive and nervous horses.

IV. Exceptions were taken to the greater part of the charge given by the court to the jury, and to the refusal to give certain instructions asked by the defendants. We have carefully examined these objections, and find no error in the respects claimed. Some of them are founded upon the thought that the court charged the jury upon facts of which there was no evidence; others are criticisms upon the structure of sentences in the instructions, and the meaning thereof. They are criticisms which are based upon reasoning which is too refined for practical application in the administration of justice. It is unnecessary to separately discuss them. The charge to the jury is a full, clear, and concise statement of the law applicable to the case, and we discover nothing erroneous in it, and nothing which could possibly mislead the jury from a proper consideration of the facts as applied to the law.

*4. ——: ——: instructions to jury.*

V. The jury returned a verdict for one thousand, five hundred dollars. It is claimed that this amount is excessive. The plaintiff is a young girl, now about eighteen years old. The injury she received by contact with the barbed wire fence when thrown from the vehicle consisted of a lacerated wound on the side of the face and neck. The physician who attended the plaintiff testified as a witness as follows: "Engaged in the practice of

*5. ——: ——: damages: verdict.*

medicine sixteen years. Treated plaintiff from time she was hurt. I found her suffering from what was supposed to be a lacerated wound; that is, on the left side of the face at the angle of the jaw, and extended four inches, possibly four and one half, in length, and one half or three quarters deep. The wound was gaping, and edges were very ragged and lacerated. I think I could place the index finger full length in the wound, and not more than be even with the margin of surface. There were no hemorrhage. They had staunched that with a handkerchief. You could see the external coats of the blood vessels. Pain was marked. I think about thirty stitches were required. Think wound was at least one half or three quarters of an inch longer than the scar. Think I visited her three times before she came to Perry, once each day. Fever was marked, but not severe. Indications of pain were marked. Visited her to the ninth, and possibly to the eleventh day, twice a day after she came to Perry. Dressed the wound each time. Fever symptoms continued until about the eleventh day. It was somewhat over a month, think not quite, when I paid her the last visit. However, I made her one visit after she was taken from Perry. There was a tendency to form a sinus, an open tube, reaching from the wound to the surface. These indications continued until I succeeded in removing them two or three weeks after she went home. I saw her last, some time in December. Wound was not entirely healed; was discharging. Have given her treatment since that time, electrical in character, with the intention of absorbing the growth that seemed to roll out between the lips of the wound. The scarred condition of her face as it appears now is permanent." The bill paid for medical services was about seventy five dollars. Add to this the proper compensation for the necessary nursing, care, and attention, and to this add the pain and suffering, mental and physical, and

above all the fact that the plaintiff must go through life with her face disfigured, and it can not be said that the verdict is excessive, even if it be founded upon actual damages.   AFFIRMED.