TABOR, Judge.
This appeal involves the legality of a dangerous animal declaration issued by the City of Des Moines. A dog, Pinky, bit a neighbor's cat, Rebel, when both animals were unlicensed and running at large in March 2016. After impounding Pinky at the Animal Rescue League, the city's chief humane officer decided the dog exhibited "vicious propensities" under Des Moines Municipal Code section 18-196 (2016) and ordered her to be destroyed. Because we find the dangerous-animal ordinance to be unconstitutionally vague as applied to Pinky, we reverse the city's declaration.
I. Facts and Prior Proceedings
In 2010, the city sent an animal control officer to the home of Charles Bickel based on a report his dog resembled a pit bull. At that time, the city declared Bickel's pet, Pinky, to be a "vicious dog" based on her breed[1] and required Bickel to provide proof of a current license and $100,000 of liability insurance coverage. Bickel initially complied but did not keep Pinky's license up to date. According to Bickel, for the next six years Pinky lived in his home without incident, never biting a person or another animal. Then, on March 27, 2016, a friend visiting Bickel's home accidently let Pinky out into the yard unsupervised while Bickel was taking a shower. When Bickel saw Pinky head back into the house he noticed a cut on her face and blood on her nose.
Meanwhile, Bickel's neighbor, Elizabeth, noticed her cat, Rebel, "had managed to sneak out of the door and was in her backyard." According to the animal incident report:
Elizabeth looked out the back window to see the neighbor's white Pit Bull type dog named "Pinky" shaking Rebel in her mouth. Elizabeth ran outside and yelled. Pinky dropped Rebel and Rebel ran up a tree where she stayed for an hour. ... When Rebel came down, Elizabeth found punctures on her chest and took her to Iowa Vet Specialties. ... Elizabeth believes Rebel scratched Pinky up as well, but is unsure of bite wounds.
Elizabeth initially told Bickel's friend "it looks like Rebel got the better of Pinky." But according to the veterinary records, Rebel had a "large laceration/wound on the right side of the dorsal pelvic area, approximately 6 centimeters in diameter, with an additional wound" and "punctures on the right thorax, just caudal to the thoracic limb." The vet described Rebel's injuries as "crushing injury to tissues resulting in devitalization" and "severe deglovingwounds." The cat required three dozen staples.
No witness saw which animal was the initial aggressor in the altercation.
The city impounded Pinky on March 29, 2016. The quarantine was set to last seven days, with Pinky's release slated for April 6. But on April 5, Chief Humane Officer James Butler declared Pinky to be a dangerous dog based on her conduct. See Des Moines, Iowa, Code § 18-196(3), (6). After a conversation with Sergeant Butler, Bickel signed a document labeled "surrender conditions," but the next day Bickel had a change of heart and filed an administrative appeal. After filing the appeal, Bickel sold his interest in Pinky to Dianna Helmers. The administrative law judge (ALJ) did not believe either Bickel or Helmers had standing to pursue the appeal but nevertheless reached the merits of Helmers's arguments.[2]
The ALJ decided Pinky's seizure was procedurally proper and found substantial evidence supported the dangerous animal declaration.[3] The ALJ noted Helmers's claim that the ordinance was unconstitutionally vague:
The Appellant argues in the alternative that the dangerous dog ordinance is unconstitutional for being vague and broad. The Appellant argues that under section 18-196, there is no element of provocation or a provision for self-defense. Therefore, a dog that was attacked by an at-large, vicious animal, or a dog protecting a human, could be considered a dangerous dog. The Appellant further argues that the terms "disfiguring laceration" and "corrective surgery" are ambiguous, as they are not defined by City ordinance.
As those constitutional claims were beyond the purview of the administrative proceedings, the ALJ preserved them for judicial review. See McCracken v. Iowa Dep't. of Human Servs. , 595 N.W.2d 779, 785 (Iowa 1999) (discussing necessity of raising constitutional claims during administrative process).
Helmers filed a petition for writ of certiorari to the district court, which affirmed the ALJ's finding of substantial evidence to support the dangerous dog declaration.[4] Helmers filed a motion to enlarge, pointing out the district court did not address her argument that the dangerous-dog ordinance was unconstitutionally vague. In response, the district court upheld the constitutionality of the ordinance. Helmers now appeals the district court's rulings.
II. Scope and Standards of Review
Our review of a district court certiorari ruling is generally for the correction of errors at law. Iowa R. Civ. P. 1.1412 (stating appeal from a district court's judgment in a certiorari proceeding is "governed by the rules of appellate procedure applicable to appeals in ordinary civil actions"); see Dressler v. Iowa Dep't of Transp. , 542 N.W.2d 563, 564-65 (Iowa 1996). "Because [Helmers] alleges a constitutional violation, our review is de novo." See id.
III. Analysis
The keeping of "dangerous animals" is prohibited within the city of Des Moines. Des Moines, Iowa, Code § 18-200. The municipal code defines a "dangerous animal" as:
any animal, including a dog, except for an illegal animal per se, as listed in the definition of illegal animal, that has bitten or clawed a person while running at large and the attack was unprovoked, or any animal that has exhibited vicious propensities in present or past conduct, including such that the animal:
(1) Has bitten or clawed a person on two separate occasions within a 12-month period;
(2) Did bite or claw once causing injuries above the shoulders of a person;
(3) Could not be controlled or restrained by the owner at the time of the attack to prevent the occurrence; or
(4) Has attacked any domestic animal or fowl on three or more separate occasions within the lifetime of the attacking animal.
(5) Has killed any domestic animal while off of the property where the attacking animal is kept by its owner.
(6) Has bitten another animal or human that causes a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery; or
(7) Any animal that was required to be removed from another city or county because of behavior that would also meet the definition of "dangerous animal" as set out in this section.
Des Moines, Iowa, Code § 18-196.
In this case, the chief humane officer declared Pinky was a dangerous animal under paragraphs (3) and (6) of section 18-196. Because the ALJ upheld the declaration under paragraph (6) only, Helmers need not challenge the alternative ground as illegal in this certiorari appeal.
Helmers devotes the lion's share of her brief to arguing the city's dangerous dog declaration was not supported by substantial evidence. Evidence is substantial when reasonable minds could accept the quality and quantity of proof as adequate to reach the same findings as the hearing officer. See City of Des Moines v. Webster , 861 N.W.2d 878, 882 (Iowa Ct. App. 2014). If the reasonableness of the hearing officer's decision is open to a fair difference of opinion, courts may not substitute their own decisions on questions of substantial evidence. Id. But rather than retracing the district court's analysis of the substantial-evidence question, we find dispositive Helmers's claim that the city's dangerous-animal ordinance was unconstitutional as applied to Pinky. See U.S. Const. amend. XIV, Iowa Const. art. I, § 9.
Due process requires legislation imposing a sanction[5] to give a person of ordinary intelligence fair notice of what conduct is prohibited so he or she may act accordingly. Am. Dog Owners Ass'n, Inc. v. City of Des Moines , 469 N.W.2d 416, 417-18 (Iowa 1991). Due process also requires the enactment to provide explicit standards for those who enforce it and must not delegate basic policy matters to law enforcement or judicial officers. Id . at 418. In assessing whether the city's ordinance is void for vagueness, we presume constitutionality and give the provision any reasonable construction to uphold it. See State v. Showens , 845 N.W.2d 436, 441 (Iowa 2014). The practical effect of deciding an ordinance is unconstitutional "as applied" is "to prevent its future application in a similar context, but not to render it utterly inoperative." See Ada v. Guam Soc. of Obstetricians & Gynecologists , 506 U.S. 1011, 1011 (1992) (Scalia, J., dissenting from denial of certiorari).
After examining both of these requirements, we conclude the definition of a dangerous dog in section 18-196-particularly how the phrase "vicious propensities" is illustrated by paragraph (6)-violates the void-for-vagueness doctrine as applied to Pinky and her owner.
We start with the question of fair notice. Did the city's drafters enable a person of ordinary understanding to realize what the ordinance prohibits? See Williams v. Osmundson , 281 N.W.2d 622, 625 (Iowa 1979) ("Literal exactitude or precision is not necessary."). Helmers points out key terms are left undefined in the ordinance-specifically the phrase "vicious propensities" in the introductory paragraph and the terms "disfiguring laceration" and "corrective surgery" in paragraph (6). But code provisions may give fair notice if their meaning can be readily determined by relying on the generally accepted and common meaning of the words, or by referring to the dictionary or previous judicial constructions. State v. Dalton , 674 N.W.2d 111, 122 (Iowa 2004).
Taking a bird's-eye view of the dangerous-animal ordinance helps place the terminology in its larger context. "Dangerous animal" is defined in two ways: (1) "any animal, including a dog, ... that has bitten or clawed[6] a person while running at large and the attack was unprovoked" or (2) "any animal that has exhibited vicious propensities in present or past conduct." Des Moines, Iowa, Code § 18-196. The second definition is illustrated by seven examples.[7] The first and second examples involve biting or clawing a person-either twice within twelve months or once causing injuries to the person's face or head. The third example describes an animal that could not be controlled or restrained by the owner at the time of an attack to prevent the occurrence. The fourth example of vicious propensities is three or more attacks on domestic animals or fowl within the lifetime of the attacking animal. The fifth example is killing a domestic animal while the attacking animal is off its owner's property. The sixth example, the one at issue here, is biting another animal or human that causes any of several non-trivial injuries, described as "a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." The seventh example refers to animals that have been removed from other jurisdictions for behavior that would meet the dangerous-animal descriptions in this section.
As an initial matter, it is unclear from the wording of the introductory paragraph's second definition of dangerous animal whether the exhibition of "vicious propensities" is satisfied by proof that an animal has engaged in any of the six listed examples of conduct or whether engaging in the listed conduct is suggestive, yet not determinative of "vicious propensities." It is also unclear whether the examples lead to an irrebuttable presumption of "vicious propensities" or if an owner may overcome the inference of viciousness by presenting evidence of the pet's prior gentle character or extenuating circumstances. These foundational ambiguities inhibit the ordinance from giving fair notice to pet owners as to what animal behavior will result in a declaration of dangerousness.
In the absence of a straightforward definition of "vicious propensities" in the ordinance, we may look to dictionaries or prior judicial renderings. At its core, the word "vicious" means "having the nature of vice." Vicious , The American Heritage College Dictionary (3d ed. 1997). "Vice" in turn may be defined as "an undesirable habit in a domestic animal." Vice , The American Heritage College Dictionary. As applied to animals, "vicious" means "marked by an aggressive disposition; savage." Vicious , The American Heritage College Dictionary. "Propensities" are defined as "innate inclinations or tendencies." Propensities , The American Heritage College Dictionary. Accordingly, a person checking a dictionary would likely view "vicious propensities" as an animal's undesirable, aggressive tendencies.
The phrase "vicious propensities" as applied to dogs also appears in Iowa tort cases. See. e.g. , Fouts v. Mason , 592 N.W.2d 33, 39-40 (Iowa 1999) (noting before premises liability may be imposed, a landowner must have knowledge of dog's vicious propensities and the dog previously bit two children demonstrating vicious propensities); Collins v. Kenealy , 492 N.W.2d 679, 682 (Iowa 1992) (holding dog's owner liable for bite under Iowa Code section 351.21 regardless of knowledge of dog's vicious propensity); Dougherty v. Reckler , 184 N.W. 304, 305-306 (Iowa 1921) (noting defendant knew of a dog's vicious propensities because people told him the dog bit a child and their horses); Alexander v. Crosby , 119 N.W.717, 717 (Iowa 1909) (acknowledging civil liability for possessing a dog with vicious propensity); Cameron v. Bryan , 56 N.W. 434, 435 (Iowa 1893) (describing a dog known to chase people down a road as having vicious propensities); Patterson v. Rank , No. 10-0566, 2010 WL 5394623, at *1-3 (Iowa Ct. App. Dec. 22, 2010) (discussing when landlord is responsible for conduct of a tenant's dog with known vicious propensities). These cases do not offer a definitive definition of "vicious propensities." But they do support the notion that a dangerous dog's reputation is linked to its inclination to bite people or to worry domestic animals without provocation.
Helmers contends a lack of provocation should be a prerequisite to finding that a pet's conduct merits a dangerous-animal declaration. But the actual construction of the ordinance depicts a different intent on the part of the drafters. An animal running at large that bites or claws a person may be designated as dangerous only if the attack is unprovoked; whereas none of the six illustrations of "vicious propensities" carries a similar exemption for provoked conduct. See generally Hildreth v. City of Des Moines , No. 15-0961, 2016 WL 7403705, at *3 (Iowa Ct. App. Dec. 21, 2016) ("The term 'unprovoked' appears in a different clause of the ordinance, which is separated from the applicable clause by the word 'or.' "). We conclude this discrepancy adds to the uncertainty of what conduct is prohibited under the ordinance. Because section 18-196 does not provide a fixed and understandable meaning for the phrase "vicious propensities" and allows the city to make a dangerous-animal declaration even when a dog is provoked to bite by another animal, we find the ordinance failed to give Pinky's owner a reasonable opportunity to steer the animal clear of prohibited conduct.
On top of the uncertainty surrounding the phrase "vicious propensities," the language of paragraph six is not precise enough to enable pet owners to anticipate what conduct could lead to a dangerous-animal declaration. Unique among the six illustrations of "vicious propensities," paragraph six targets the biting of any other animal-whether domestic or wild.[8] It also does not matter under paragraph (6) whether the biting takes place in the pet's own backyard or whether the biting is provoked or unprovoked. If by some chance occurrence, as happened here, a dog leaves its owner's home and harms another animal-even if the other animal was also at large and was the first aggressor-the ordinance allows the single incident to precipitate a finding of "vicious propensities."
Further, the list of non-minor injuries in paragraph (6) appears tailored to human injuries and, therefore, does not provide clear guidance in situations like this one, where the dog bite resulted in injury to another animal. See generally Pennsylvania v. Morgera , 836 A.2d 1070, 1074 (Pa. Commw. Ct. 2003) (holding evidence did not support conclusion that injuries inflicted by dog on sheep constituted "disfiguring lacerations" or required "cosmetic surgery"). Here, the term "corrective surgery" is not readily defined in law or medicine, and it remains open for debate whether a veterinarian's use of multiple sutures on a cat's wounds may be classified as "corrective surgery."
We recognize where legislation can be made "constitutionally definite" by judicial construction, we are under an obligation to do so. See Nail , 743 N.W.2d at 539-40. But even our shiniest judicial gloss cannot provide adequate notice to dog owners regarding what conduct would show "vicious propensities" when a previously well-behaved dog faces off against a provocative animal running at large.[9] The definition of "vicious propensities" in section 18-196, and particularly paragraph (6), does not satisfy the minimal level of precision in drafting as applied to Pinky.
Even if Pinky's owner had fair warning of what conduct was prohibited, the next question is whether the dangerous-animal ordinance offered "minimal guidelines to govern law enforcement." See Kolender v. Lawson , 461 U.S. 352, 358 (1983) (recognizing this requirement as the more important aspect of the vagueness analysis). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." Grayned v. City of Rockford , 408 U.S. 104, 108 (1972). "A vague law impermissibly delegates basic policy matters" to those entrusted with enforcing it, leading to "resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Id . at 108-09.
We are persuaded by Helmer's argument that a dangerous-animal declaration based on injuries to another animal leaves too much discretion in the hands of city officials. "A law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." City of Chicago v. Morales , 527 U.S. 41, 56 (1999) (citing Giaccio v. Pennsylvania , 382 U.S. 382 U.S. 399, 402-403 (1966) ). It is difficult to imagine how any Des Moines pet owner would know whether an altercation between their pet and another animal would spur the humane officer to declare their pet dangerous. As counsel for Helmers asserted at oral argument, an outdoor cat that snares an unlucky bird and breaks its wing could be declared a dangerous animal under section 18-196(6). But would the humane officer pursue such a case? If instead of Rebel, an aggressive opossum had been waiting for Pinky in the backyard and Pinky's defensive bite caused the wild animal a muscle tear, would the humane officer have decided Pinky exhibited "vicious propensities"? The ordinance does not delineate clear boundaries between what conduct by an animal is tolerated within the city limits of Des Moines and what marks an animal as having "vicious propensities." See id. at 64 (finding loitering ordinance failed to provide "sufficiently specific limits on the enforcement discretion of the police" to satisfy constitutional standards for definiteness and clarity). Accordingly, we conclude that, as applied to Pinky, section 18-196(6) is void for vagueness.
REVERSED AND REMANDED.
Danilson, C.J. and Doyle, J., concur specially. Vaitheswaran and McDonald, JJ., dissent.
DANILSON, Chief Judge (concurring specially).
I concur in the majority opinion but write separately to elaborate on the vagueness issue and address the sufficiency of the evidence if the majority is in error in declaring Des Moines Code of Ordinances section 18-196(6) unconstitutionally vague.
Part and parcel to Helmers' argument that there is insufficient evidence to affirm the district court's ruling is Helmers' argument reciting "provocation is intrinsically an element of the definition of vicious propensities." Helmers further asserted:
Because provocation is an element of vicious propensities, it would be redundant for the term to be added to the ordinance. To find otherwise could result in the destruction of a dog that was acting purely in self-defense, which would be an absurd and inhumane result. For these reasons, this court should find that the statute requires provocation. It is undisputed that the City has not shown by substantial evidence that Pinky was unprovoked.
There is no dispute the evidence fails to show if Pinky was provoked or unprovoked. However, neither the administrative law judge (ALJ) nor the district court interpreted section 18-196 to require lack of provocation.
As the majority observed, "where legislation can be made 'constitutionally definite' by judicial construction, we are under an obligation to do so." See State v. Nail , 743 N.W.2d 535, 540 (Iowa 2007). The well-settled principles of statutory construction were identified in In re Estate of Gantner , 893 N.W.2d 896, 902 (Iowa 2017), and need not be restated here. I would agree interpreting section 18-196 to require a lack of provocation could aid in interpreting the statute so it is not unconstitutionally vague, but we have previously concluded the ordinance provides various alternatives and not all of the alternatives require a lack of provocation. See Hildreth v. City of Des Moines , No. 15-0961, 2016 WL 7403705, at *3 (Iowa Ct. App. Dec. 21, 2016). I find Hildreth persuasive and consistent with the plain reading of the ordinance.
Helmers' better argument is that the ordinance should be interpreted to require proof of vicious propensities even if the city has proven the elements of 18-196(3) or (6). Helmers argues, "Pinky must still have exhibited 'vicious propensities' in order to be declared dangerous." Again, this interpretation differs from the interpretation applied by the district court and the ALJ.
A review of the ordinance reflects two alternatives to meet the definition of a dangerous animal or dog. First, a dangerous dog is a dog that "has bitten or clawed a person while running at large and the attack was unprovoked." Des Moines, Iowa, Code § 18-196. The second alternative is any dog that "has exhibited vicious propensities in present or past conduct." Id. § 18-196.
I may be able to accept the conclusion Des Moines Ordinance 18-196(6) was not vague and interpret the ordinance to require a finding of vicious propensities in addition to one of the seven categories if this resolved the problem. But this does not end the efforts to unravel Des Moines Ordinance 18-196(6).
One of the oddities of the ordinance is observed by comparing category five with category six. Category five applies where a domestic animal is killed while the alleged dangerous animal is "off of the property where the attacking animal is kept by its owner." Des Moines, Iowa, Code § 18-196(5). Yet in category six, as applied to animals, there is no requirement of any specified location, death, attack, or that the animal was a domestic animal. See id. § 18-196(6). Category six only requires a fairly serious injury to another animal or person described as "a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." Id. § 18-196(6). However, the logic of the drafters of the ordinance is not consequential here. More importantly, as observed by the majority, "the term 'corrective surgery' [in category six] is not readily defined in law or medicine" and is a mystery term. There is no common meaning or definition of "corrective surgery." Although I would agree if the term is divided into two separate terms-"corrective" and "surgery"-there are common meanings that can be applied. Unfortunately, applying common definitions to a technical term may expand the definition intended by the drafters. The better approach is to defer to experts or specialized dictionaries for technical terms. See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ. , 550 U.S. 81 (2007). Perhaps expert testimony could have illuminated upon the issue of whether Rebel had undergone corrective surgery, but the city failed to present expert testimony from the treating veterinarian. Notwithstanding the presumption of constitutionality,[10] a reasonable person cannot determine what conduct is prohibited, and any effort to construe the ordinance to avoid its infirmity would be guesswork at best. In short, whether Rebel's sutures and other care constituted "corrective surgery" is unknown.[11]
In sum, I agree with majority's result that section 18-196(6) is unconstitutionally vague. Moreover, even if the vagueness could be overcome through interpretation or construction of the ordinance, and thereby demystified, there is insufficient evidence to support the dangerous-dog declaration. No evidence was presented of any vicious propensities of Pinky other than her one act with Rebel, which I find wholly insufficient. Further, without expert testimony, there was negligible proof Rebel underwent any type of surgery or any "corrective surgery," whatever that latter term may entail.[12]
DOYLE, Judge (concurring specially).
I concur with Judge Tabor's opinion. Although I have no dog in the fight, I feel compelled to ask: Why can't this dispute be settled?
At the time of the altercation between Pinky and Rebel, Rebel's owner did not want citations issued and hoped to work it out with Pinky's owner. Since then, Rebel made a full recovery and her veterinary bills were paid by Bickel's insurance carrier. Meanwhile, Pinky has been impounded for the last two years. Pinky's current owner, Dianna Helmers, and her previous owner, Charles Bickel, and his son, have been denied visitation with Pinky. Helmers offered to shelter Pinky at her rural Reinbeck licensed animal rescue shelter. But, after issuing a dangerous dog declaration on April 5, 2016, the City of Des Moines has been unwavering in its mission to kill Pinky. Two years of what must be costly litigation ensued.
The purpose of the city's dangerous dog ordinance is to protect those within the confines of the city from injury or harm by dangerous dogs. Helmers offered to remove Pinky from Des Moines and shelter her in Grundy County. Pinky's removal from Des Moines would eliminate the risk that Pinky might cause harm to someone in Des Moines. Sounds like a win/win solution-Pinky's life is spared and Des Moines is freed of what it perceives as a threat of harm to its citizens. Despite the offer from Helmers, no settlement was reached and the litigation continued-eventually ending up in this court. Asked at oral argument why the city had not accepted Helmer's offer, the city's counsel expressed "liability" concerns. I am confident the city's lawyers, or the city's insurance carrier's lawyers, are fully capable of drafting an ironclad release protecting the city from any potential liability in releasing Pinky to Helmers.
So, I ask again: Why can't this dispute be settled?

The city has since revised this provision to replace the term "vicious" with "high risk" dog but still lists the following breeds: a Staffordshire Terrier, an American Pit Bull Terrier, an American Staffordshire Terrier, or any dog which has the appearance and characteristics of being predominately of the breeds of Staffordshire Terrier, American Pit Bull Terrier or an American Staffordshire Terrier. See Des Moines, Iowa, Code § 18-41(6)-(9) (2016). Pinky's designation as a high-risk breed did not directly impact the city's later determination she was a "dangerous dog" under section 18-196.

The city unsuccessfully contested Helmers's standing to pursue this matter in the district court. The city does not renew its standing challenge in this appeal.

The ALJ determined the city's evidence satisfied subsection (6) of section 18-196. The ALJ did not rule on subsection (3).

The district court found substantial evidence in the record to support subsection (3), though the ALJ did not rule on that ground.

"[T]he void-for-vagueness doctrine applies to legislation establishing civil or criminal sanctions." State v. Nail , 743 N.W.2d 535, 539 (Iowa 2007) (citing State v. Powers , 278 N.W.2d 26, 29 (Iowa 1979) ). The city's dangerous-animal provisions impose criminal penalties: failure to comply with an order of the chief humane officer constitutes a misdemeanor offense. See Des Moines, Iowa, Code § 18-202(f).

Bitten or clawed means "breaking of skin." Des Moines, Iowa, Code § 18-196.

The list is preceded by this language: "including such that the animal: ..." The word "including" is "not one of all-embracing definition, but connotes simply an illustrative application of the general principle." Fed. Land Bank of St. Paul v. Bismarck Lumber Co. , 314 U.S. 95, 100 (1941) ; see also State Pub. Def. v. Iowa Dist. Court for Black Hawk Cty. , 633 N.W.2d 280, 283 (Iowa 2001) (explaining that word "including" usually is interpreted as a term of enlargement or illustration, but may also be interpreted as a term of limitation).

Paragraph (6) also includes bites to humans resulting in non-minor injuries. Our as-applied vagueness analysis in this case does not address the situation where a dog bites a person.

Quoting an unnamed poet, our supreme court once said: "Let dogs delight to bark and bite, For God hath made them so." Brown v. Moyer, 171 N.W. 297, 299 (1919). In rejecting a common law negligence suit brought by the injured owner of a small dog that was chased by defendant's large dog, the court wrote: "[E]very owner of what is said to be 'man's best friend' should teach his dog to have a discriminating mind, when he undertakes to indulge in what is thought to be a natural propensity, if he would save his dog from an untimely grave." Id . Addressing dogs directly, the court continued: "Even the right of self-defense, claimed by your master as his inalienable right, is denied to you. Though bruised and beaten without cause, you cannot defend yourself without suffering the death penalty. Poor dog! Justice and mercy is not for you." Id.

"In assessing whether a statute is void-for-vagueness this court employs a presumption of constitutionality and will give the statute 'any reasonable' construction to uphold it." Formaro v. Polk Cty. , 773 N.W.2d 834, 840-41 (Iowa 2009) (citation omitted).

At one time, Minnesota Statute section 347.50(3) defined a "potentially dangerous animal" as "[a]ny animal that, when unprovoked, bites a person on public or private property, causing a minor injury not resulting in muscle tears or disfiguring lacerations or requiring multiple sutures, or corrective or cosmetic surgery." As can be observed from the language of the statute, sutures were described as separate and distinct from corrective surgery.

There was also no evidence to support the declaration of dangerous dog under section 18-196(3) because, again, there was no evidence of vicious propensities, and alternative (3) requires the owner to be unsuccessful in efforts to restrain and control the dog, a fact lacking here.